

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
Caption in compliance with D.N.J. LBR 9004-1(b)

**McCARTER & ENGLISH, LLP**
Clement J. Farley, Esq.
Geoffrey E. Lynott, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile:  (973) 624-7070
Email: cfarley@mccarter.com
        glynott@mccarter.com
*Attorneys for the Chapter 7 Trustee Jeffrey T. Testa*

**Order Filed on August 24, 2022
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

In re:

ZAYAT STABLES, LLC,

                    Debtor.

Case No.: 20-20524 (VFP)

*Involuntary* Chapter 7

**ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG
CHAPTER 7 TRUSTEE JEFFREY T. TESTA, MGG INVESTMENT GROUP LP,  MGG SF EVERGREEN
FUND LP, MGG SPECIALTY FINANCE FUND LP, MGG SF DRAWDOWN MASTER FUND (CAYMAN)
LP, MGG SF DRAWDOWN UNLEVERED FUND LP, MGG SF EVERGREEN MASTER FUND (CAYMAN)
LP, MGG SF EVERGREEN UNLEVERED FUND LP, MGG INSURANCE FUND SERIES INTERESTS OF
THE SALI MULTI-SERIES FUND LP, MGG SF EVERGREEN UNLEVERED MASTER FUND II
(CAYMAN) LP, MGG ONSHORE FUNDING II LLC, AHMED ZAYAT, JOANNE ZAYAT, JUSTIN ZAYAT,
SHERIF ZAYAT,  ASHLEY ZAYAT WEISS, GLENN WEISS, BENJAMIN ZAYAT,
EMMA ZAYAT AND JPZ HOLDINGS, LLC**

         The relief set forth on the following pages, numbered two (2) through three (3), is hereby
ORDERED.

**DATED: August 24, 2022**

_____
**Honorable Vincent F. Papalia**
**United States Bankruptcy Judge**

ME1 41622300v.1

Page:        2
Debtor:      Zayat Stables, LLC
Case No.:    20-20524 (VFP)
Caption:     Order Approving the Settlement By and Between Chapter 7 Trustee Jeffrey T. Testa, MGG
             Investment Group LP, MGG SF Evergreen Fund LP, MGG Specialty Finance Fund LP, MGG SF
             Drawdown Master Fund (Cayman) LP, MGG SF Drawdown Unlevered Fund LP, MGG SF
             Evergreen Master Fund (Cayman) LP, MGG SF Evergreen Unlevered Fund LP, MGG Insurance
             Fund Series Interests of the SALI Multi-Series Fund LP, MGG SF Evergreen Unlevered Master
             Fund II (Cayman) LP, MGG Onshore Funding II LLC, Ahmed Zayat, Joanne Zayat, Justin Zayat,
             Sherif Zayat, Ashley Zayat Weiss, Glenn Weiss, Benjamin Zayat, Emma Zayat and JPZ Holdings,
             LLC

---

Upon consideration of the motion (the "Motion")[1] of Jeffrey T. Testa, the duly appointed

Chapter 7 Trustee (the "Chapter 7 Trustee") of the, for entry of an order approving settlement

agreement by and between (i) Jeffrey T. Testa in his capacity as the duly appointed, qualified and

serving Chapter 7 Trustee of Debtor Zayat Stables, LLC (the "Chapter 7 Trustee"), (ii) MGG

Investment Group LP, MGG SF Evergreen Fund LP, MGG Specialty Finance Fund LP, MGG

SF Drawdown Master Fund (Cayman) LP, MGG SF Drawdown Unlevered Fund LP, MGG SF

Evergreen Master Fund (Cayman) LP, MGG SF Evergreen Unlevered Fund LP, MGG Insurance

Fund Series Interests of the SALI Multi-Series Fund LP, MGG SF Evergreen Unlevered Master

Fund II (Cayman) LP, and MGG Onshore Funding II LLC (collectively, "MGG"), and (iii)

Ahmed Zayat, Joanne Zayat, Justin Zayat, Sherif Zayat, Ashley Zayat Weiss, Glenn Weiss,

Benjamin Zayat, Emma Zayat and JPZ Holdings, LLC (collectively, the "Zayat Parties" and

together with the Chapter 7 Trustee and MGG, the "Parties"); and it appearing that the Court has

jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334; and it appearing that venue of

the Debtor's case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and it appearing that this matter is a core proceeding within the meaning of 28 U.S.C. §

157(b)(2)(A) and (O); and it appearing that notice of the Motion as set forth therein is sufficient,

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion or the Settlement
Agreement, of which the Settlement Agreement shall control.

Page:        3
Debtor:      Zayat Stables, LLC
Case No.:    20-20524 (VFP)
Caption:     Order Approving the Settlement By and Between Chapter 7 Trustee Jeffrey T. Testa, MGG
             Investment Group LP, MGG SF Evergreen Fund LP, MGG Specialty Finance Fund LP, MGG SF
             Drawdown Master Fund (Cayman) LP, MGG SF Drawdown Unlevered Fund LP, MGG SF
             Evergreen Master Fund (Cayman) LP, MGG SF Evergreen Unlevered Fund LP, MGG Insurance
             Fund Series Interests of the SALI Multi-Series Fund LP, MGG SF Evergreen Unlevered Master
             Fund II (Cayman) LP, MGG Onshore Funding II LLC, Ahmed Zayat, Joanne Zayat, Justin Zayat,
             Sherif Zayat, Ashley Zayat Weiss, Glenn Weiss, Benjamin Zayat, Emma Zayat and JPZ Holdings,
             LLC

and that no other or further notice need be provided; and the Court having found that the relief

requested in the Motion is in the best interest of the Debtor's estate and its creditors; and the

Court having found that the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefore, it is hereby

ORDERED that the Motion is hereby granted as set forth herein; and it is further

ORDERED that the Settlement Agreement attached hereto as **Exhibit A** is hereby

deemed approved and binding on the Parties; and it is further

ORDERED that the Parties to the Settlement Agreement are directed to execute the

Settlement Agreement and abide by the terms and conditions thereof; and it is further

ORDERED that the Chapter 7 Trustee is hereby authorized and empowered to take all

actions necessary to implement the relief granted in this Order and the Settlement Agreement;

and it is further

ORDERED that this Court shall, and hereby does, retain jurisdiction with respect to all

matters arising from or in related to the implementation of this Order.

# Exhibit A

## Settlement Agreement

ME1 41622300v.1

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
Caption in compliance with D.N.J. LBR 9004-1(b)

**McCARTER & ENGLISH, LLP**
Clement J. Farley
Geoffrey E. Lynott
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile:  (973) 624-7070
Email: cfarley@mccarter.com
           glynott@mccarter.com

*Counsel to the Chapter 7 Trustee Jeffrey T. Testa*

| | |
|---|---|
| In re: | Case No.: 20-20524 (VFP) |
| ZAYAT STABLES, LLC, | Chapter 7 |
| Debtor. | |

**SETTLEMENT AGREEMENT BY AND AMONG CHAPTER 7 TRUSTEE
JEFFREY T. TESTA, MGG INVESTMENT GROUP LP, MGG SF EVERGREEN FUND
LP, MGG SPECIALTY FINANCE FUND LP, MGG SF DRAWDOWN MASTER FUND
(CAYMAN) LP, MGG SF DRAWDOWN UNLEVERED FUND LP, MGG SF
EVERGREEN MASTER FUND (CAYMAN) LP, MGG SF EVERGREEN UNLEVERED
FUND LP, MGG INSURANCE FUND SERIES INTERESTS OF THE SALI MULTI-
SERIES FUND LP, MGG SF EVERGREEN UNLEVERED MASTER FUND II
(CAYMAN) LP, MGG ONSHORE FUNDING II LLC, AND AHMED ZAYAT, JOANNE
ZAYAT, JUSTIN ZAYAT, SHERIF ZAYAT, ASHLEY ZAYAT WEISS, GLENN WEISS,
BENJAMIN ZAYAT, EMMA ZAYAT AND JPZ HOLDINGS, LLC**

This Settlement Agreement (the "Settlement Agreement") is made by and among (i) Jeffrey

T. Testa in his capacity as the duly appointed, qualified and serving Chapter 7 Trustee of debtor

Zayat Stables, LLC (the "Chapter 7 Trustee"), (ii) MGG Investment Group LP, MGG SF

Evergreen Fund LP, MGG Specialty Finance Fund LP, MGG SF Drawdown Master Fund

(Cayman) LP, MGG SF Drawdown Unlevered Fund LP, MGG SF Evergreen Master Fund

(Cayman) LP, MGG SF Evergreen Unlevered Fund LP, MGG Insurance Fund Series Interests of

the SALI Multi-Series Fund LP, MGG SF Evergreen Unlevered Master Fund II (Cayman) LP, and MGG Onshore Funding II LLC (collectively, "MGG"), and (iii) Ahmed Zayat, Joanne Zayat, Justin Zayat, Sherif Zayat, Ashley Zayat Weiss, Glenn Weiss, Benjamin Zayat, Emma Zayat and JPZ Holdings, LLC (each individually a "Zayat Party," and collectively, the "Zayat Parties").  The Chapter 7 Trustee, MGG, and the Zayat Parties (the "Parties") agree as follows:

WHEREAS, in 2016 MGG made a series of prepetition loans to Zayat Stables, LLC ("ZS" or the "Debtor"), which were secured by the company's assets, inclusive of its horses, breeding rights and other equine assets, and proceeds therefrom.   The owner and sole member of ZS, Ahmed Zayat, also pledged, among other things, the stock of ZS as additional collateral.

WHEREAS, on or about July 26, 2016, ZS entered into a financing agreement, as amended, modified, restated, or supplemented (the "Financing Agreement") with certain affiliates of MGG Investment Group LP and with MGG Investment Group LP as Administrative Agent and Collateral Agent (the "Agent").

WHEREAS, on or about July 26, 2016, ZS entered into a pledge and security agreement with the Agent, as later amended (the "Pledge and Security Agreement," and collectively with the Financing Agreement and other agreements, the "Loan Documents").

WHEREAS, MGG filed UCC-1 financing statements in Kentucky, Delaware, New York, Florida and California against the assets of ZS.

WHEREAS, pursuant to the Loan Documents, ZS was indebted to MGG in an amount no less than $24,534,166.13 (the "Obligations"), and such Obligations are secured by valid, enforceable, properly perfected, first priority, and unavoidable liens and security interests (collectively, the "Pre-Petition Liens") encumbering substantially all of the assets of the Debtor as set forth in the Loan Documents and as defined therein as the "Collateral").

WHEREAS, MGG's Pre-Petition Liens are valid, binding, enforceable, properly perfected, first-priority liens and security interests in the Collateral and are not subject to

2

avoidance, recharacterization, subordination, recovery, attack, counterclaim, defense, claim or challenge of any kind or nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise.

**WHEREAS,** prior to the Petition Date, one or more Events of Default (as defined in the Loan Documents) occurred and are continuing under the Loan Documents.

**WHEREAS,** on January 21, 2020, MGG instituted litigation against ZS through the filing of a complaint (the "KY Complaint") in the Commonwealth of Kentucky, Fayette Circuit Court, bearing Civil Action No. No. 20-CI-00248 (the "KY Litigation").

**WHEREAS,** on January 22, 2020, a State Court Receiver was appointed in the KY Litigation to among other things, liquidate the remaining equine assets owned by ZS.

**WHEREAS,** on June 10, 2020, MGG was awarded a judgment against ZS in the KY Litigation in the amount of $24,534,166.13 (the "KY Judgment").

**WHEREAS,** on September 8, 2020, Ahmed A. Zayat filed a voluntary Chapter 7 petition for bankruptcy in the United States Bankruptcy Court for the District of New Jersey bearing Case No. 20-20387 (VFP) (the "Ahmed Bankruptcy").

**WHEREAS,** on September 14, 2020 (the "Petition Date"), an involuntary petition was filed against ZS in the United States Bankruptcy Court for the District of New Jersey bearing Case No. 20-20524 (VFP) (the "ZS Bankruptcy").

**WHEREAS,** as of the Petition Date, $2,633,724.09 in interest had accrued on the KY Judgment.

**WHEREAS,** as of the Petition Date, ZS was indebted to MGG without defense, counterclaim, recoupment, setoff, or offset of any kind, in the aggregate amount of no less than $27,167,890.22.

3

**WHEREAS**, on September 25, 2020, MGG filed a motion seeking an *Order Excusing the Duly Appointed State Court Receiver for the Alleged Debtor from Compliance with the Requirements of Bankruptcy Code Section 543(b)* (Dkt. No. 18).

**WHEREAS**, on October 9, 2020, the Bankruptcy Court entered an *Order (I) Granting Motion of MGG Investment Group, L.P. Excusing Duly Appointed State Court Receiver from Compliance with the Requirements of Bankruptcy Code Section 543(b) (II) Granting Additional Related Relief Requested in the Motion; and (III) Providing for the Reservation of Certain Rights with Respect to a Chapter 7 Trustee Appointed in the Zayat Stables Involuntary Chapter 7 Case* (the "Interim 543 Order") (Dkt. No. 41).

**WHEREAS,** on October 9, 2020, the Office of the United States Trustee for the District of New Jersey appointed Jeffrey T. Testa as the Chapter 7 Trustee (Dkt. No. 42) in the ZS Bankruptcy.

**WHEREAS,** given the nature of the involuntary bankruptcy filing the Chapter 7 Trustee made his best efforts to file the Debtor's schedules.

**WHEREAS,** on November 16, 2020, the Bankruptcy Court entered an *Order Authorizing the Retention of McCarter & English, LLP as Counsel to the Chapter 7 Trustee Nunc Pro Tunc to October 10, 2020* (Dkt. No. 65) and the *Order Authorizing the Retention of Vestcorp, LLC as Accountants to the Chapter 7 Trustee* (Dkt. No. 64).

**WHEREAS,** on November 12, 2020, the Court entered the *Final Order (I) Granting Motion of MGG Investment Group, L.P. Excusing Duly Appointed State Court Receiver from Compliance with the Requirements of Bankruptcy Code Section 543(b) (II) Granting Additional Related Relief Requested in the Motion; and (III) Providing for the Reservation of Certain Rights with Respect to a Chapter 7 Trustee Appointed in the Zayat Stables Involuntary Chapter 7 Case* (the "Final 543 Order") (Dkt. No. 60).

4

**WHEREAS,** the Final 543 Order defines "Cash Collateral" as "the cash proceeds of MGG's Collateral," and states that "MGG's rights in and to the Cash Collateral and all proceeds of the Collateral shall, in accordance of the terms of this Final Order, continue to be preserved to the fullest extent permitted by law, regardless of whether such Cash Collateral and/or proceeds of MGG's Collateral are deposited into the Receivership Account or into the Trustee Account," and that "MGG is entitled to the continuing and uninterrupted protection of its Liens…security interests and other rights under the Loan Documents."

**WHEREAS**, the Final 543 Order further states that "This Final Order shall be sufficient and conclusive evidence of the existence of MGG's continuing and uninterrupted Liens against the Collateral as provided for in the Loan Documents without the necessity of filing or recording any financing statement, mortgage, notice or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to establish the existence of such Liens to the extent of the status of such Liens as of the Involuntary Petition Date."

**WHEREAS**, by the terms of the Final 543 Order, the Trustee "authorizes and approves, that MGG's Cash Collateral and discretionary protective advances shall continue to be used solely for the payment of ordinary and necessary expenses of the receivership, pursuant to and consistent with all of MGG's rights as a secured creditor under the Loan Documents and the terms of this Final Order."

**WHEREAS,** the terms of the Final 543 Order were subject to the rights of the Chapter 7 Trustee to "examine, investigate, and challenge the priority, validity, enforcement and perfection of the Obligations, Liens and other rights secured by the Collateral under the Loan Documents and MGG's rights with respect to the Collateral (including Cash Collateral) as further provided in this Final Order," which challenge rights are being extinguished as hereinafter set forth.

5

**WHEREAS,** on January 15, 2021, MGG filed an unliquidated proof of claim of no less than $24,534,166.13 pursuant to the KY Judgment (the "MGG Claim").

**WHEREAS,** on or about June 3, 2021, after completing the liquidation of certain assets of the Debtor's estate consistent with the Final 543 Order, the State Court Receiver filed her final report with this Court, along with a motion seeking the entry of an order approving the final report and discharging her from her duties as the Receiver in the Chapter 7 Case (the "Motion to Discharge Receiver") (Dkt. No. 91).

**WHEREAS,** on June 29, 2021, this Court approved the Motion to Discharge Receiver.

**WHEREAS,** on July 7, 2021, the Court entered the *Order Authorizing the Retention of Epiq eDiscovery Solutions to serve as the Chapter 7 Trustee's Electronic Document Collection and Electronic Storage Manager Nunc Pro Tunc to May 14, 2021* (Dkt. No. 64).

**WHEREAS,** on July 20, 2021, this Court entered an *Order Granting Motion to Approve Final Report* and discharge the Receiver (the "Order Discharging Receiver") (Dkt. No. 113). Notwithstanding the entry of the Order Discharging Receiver, the terms of the Final 543 Order, as such terms relate to MGG's Cash Collateral, remain in full force and effect, subject to the modifications hereinafter set forth.

**WHEREAS,** after commencement of the KY Litigation, various of the parties have been engaged in a series of litigations and disputes, including (A) *In re Ahmed A. Zayat*, bearing Case No. 20-20387-VFP, pending in the United States Bankruptcy Court for the District of New Jersey; (B) *In re Zayat Stables, LLC*, bearing Case No. 20-20524-VFP, pending in the United States Bankruptcy Court for the District of New Jersey; (C) *MGG Investment Group, LP v. Zayat Stables, LLC, Ahmed A. Zayat and Justin Zayat*, bearing Case No. 2:21-cv-17843-MCA-MAH, pending in the United States District Court for the District of New Jersey; (D) *MGG Investment Group, L.P., MGG Specialty Finance Fund, LP, MGG SF Evergreen Fund LP v. Ahmed A. Zayat*, bearing Adv.

6

No. 20-01620 (VFP), pending in the United States Bankruptcy Court for the District of New Jersey; (E) *MGG Investment Group LP v. Ashley Zayat Weiss*, bearing Case No. 2020-014909-CA-01 (11), pending in the 11th Judicial Circuit for Miami-Dade County, Florida; (F) *MGG Investment Group LP v. Joanne Zayat, Benjamin Zayat, and Emma Zayat*, bearing Docket No. BER-L-003889-20 in the Superior Court of New Jersey Law Division: Bergen County; and (G) *MGG Investment Group, LP v. Glenn Weiss*, bearing Index No. 657057/2021, pending in the Supreme Court of New York, County of New York (actions C-G, the "MGG-Zayat Actions").

**WHEREAS,** the Zayat Parties have and continue to dispute the allegations in the MGG-Zayat Actions.

**WHEREAS,** the Chapter 7 Trustee, MGG, and the Chapter 7 Trustee of the Ahmed Zayat Bankruptcy have been operating under a common interest agreement and focused on obtaining recoveries for the benefit of all creditors of the Debtor, as their interests may appear.

**WHEREAS,** the Chapter 7 Trustee, with the assistance of his retained professionals, has reviewed and analyzed voluminous documents and records including but not limited to the transfers between ZS and the Zayat Parties, the Loan Documents, and the allegations among the Parties.

**WHEREAS,** the Chapter 7 Trustee is currently holding the sum of $1,256,126.97, which consists almost entirely of the Cash Collateral received from the State Court Receiver, and which sum is subject to the terms, conditions and restrictions set forth in the Final 543 Order, which have not been modified, amended or superseded.

**WHEREAS**, on or about May 26, 2022, the Zayat Parties and the Chapter 7 Trustee of the Ahmed Bankruptcy negotiated a settlement agreement to resolve the disputes between and among them, which settlement agreement was subject to Bankruptcy Court approval (the "Zayat Trustee Settlement");

7

**WHEREAS,** on June 23, 2022, the Honorable Mark Falk, U.S.M.J. (ret.) conducted a mediation session with MGG, the Chapter 7 Trustee, the Chapter 7 Trustee of the Ahmed Bankruptcy, and the Zayat Parties in an attempt to resolve this dispute (the "Mediation").

**WHEREAS,** at the Mediation, a settlement was reached under which the Zayat Parties shall make an initial payment to MGG and to the Chapter 7 Trustee of the Ahmed Bankruptcy and pursuant to which the ZS Bankruptcy estate shall receive the amounts previously agreed upon between it and MGG, and the Zayat Parties shall also make deferred payments over a period of time (the "Mediation Settlement").

**WHEREAS**, at the Mediation, MGG and the Zayat Parties agreed that the settlement reached on that day would be placed before the Court together with the settlements involving the Chapter 7 Trustee and the Chapter 7 Trustee for the Ahmed Bankruptcy.

**WHEREAS**, the Mediation Settlement was further documented in an agreement between MGG, the Zayat Parties, the Chapter 7 Trustee and the Chapter 7 Trustee for the Ahmed Bankruptcy (the "Mediation Settlement Agreement").

**WHEREAS**, in connection with and in order to effectuate the global settlement reflected in the Mediation Settlement Agreement, MGG, the Zayat Parties, and the Chapter 7 Trustee have reached the agreement reflected herein.

**WHEREAS,** after extensive investigation, negotiations, and mediation, the Chapter 7 Trustee believes this Settlement Agreement is in the best interest of all creditors of the Debtor.

**WHEREAS**, the Chapter 7 Trustee has informed the Zayat Parties that he will not be pursuing any further turnover or avoidance action in the ZS Bankruptcy which would result in any direct or indirect liability to the Zayat Parties if the settlement is approved by the Court.

**NOW, THEREFORE**, in consideration of the premises aforesaid and the mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

8

1.    **Recitals Incorporated**. The recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full, and made a part of, this Settlement Agreement.

2.    **Effective Date**. The effective date (the "Effective Date") of this Settlement Agreement shall be deemed to occur when (i) this Settlement Agreement is approved by the United States Bankruptcy Court for the District of New Jersey and becomes a final and non-appealable order ("Approval Order"), *and* (ii) the Initial Payment called for under and as defined in the Mediation Settlement Agreement has been made, and the security called for by the Mediation Settlement Agreement is in place.  In the event the Effective Date does not occur, all relief set forth herein shall be deemed null, void and of no effect, and all of MGG's rights under the Loan Documents and the Final 543 Order shall remain in full effect.  For the avoidance of doubt, the terms of the Final 543 Order shall remain in effect, and shall continue to control, MGG's rights regarding the Cash Collateral, until the Effective Date has occurred.

3.    **Allowance of Claim**. On the Effective Date, MGG shall be deemed to have an allowed claim in the amount of at least $27,167,890.22 which is secured by MGG's legal, valid, binding, and perfected security interests in the Collateral (the "MGG Allowed Claim").  Nothing herein shall modify MGG's substantive rights under the Loan Documents with respect to the MGG Allowed Claim, including but not limited to MGG's valid, binding, perfected security interests in and to the Collateral and the Cash Collateral, MGG's right to receive proceeds of the Collateral currently held or hereafter received by the Chapter 7 Trustee, or MGG's right to receive, in accordance with its perfected security interests, its share of any and all additional proceeds generated or recovered by the Trustee (including MGG's pro rata share of distributions payable to unsecured creditors of the Debtor), or MGG's right to credit bid or otherwise bid for any assets of the ZS Estate aside from those assets that the Trustee has specifically abandoned as described below.  Neither the Chapter 7 Trustee, nor any Zayat Party, possesses or may assert any objection to the allowance of MGG's claim in the above amount.

9

4.    **Waiver of Lien Challenge**. On the Effective Date the Chapter 7 Trustee and the Zayat Parties shall be deemed to have waived, released and discharged the right to challenge the priority, validity, extent, enforcement and perfection of the Obligations, liens and other rights secured by the Collateral under the Loan Documents and MGG's rights with respect to the Collateral (including the Cash Collateral).  As of the Effective Date the Chapter 7 Trustee stipulates that the KY Judgment is final and further stipulates that it waives and releases with prejudice all defenses and all direct and derivative claims or counterclaims that were asserted, or that could have been asserted, by or on behalf of or derivatively through the Debtor or any other Zayat Party against MGG in the KY Litigation.

5.    **Replacement Liens to MGG**. Pursuant to this Settlement Agreement, to the extent that MGG allows the Chapter 7 Trustee to use MGG's Cash Collateral, MGG is granted, as of the Effective Date but subject to the terms of this Settlement Agreement, continuing replacement security interests and liens (collectively, the "Replacement Liens"), which Replacement Liens shall have the same priority, validity, force, extent, and effect as the liens that they replace, effective as of the Petition Date without the necessity of MGG taking any further action, upon the right, title and interest in the following property of the Debtor's estate:  (a) All pre-petition Collateral, including all proceeds, profits, rents and products thereof; and (b) Property acquired by the Debtor's estate after the Petition Date, which is of the same nature, kind, and character as the pre-petition Collateral, and all proceeds, profits, rents and products thereof.  The Replacement Liens shall be deemed automatically valid and perfected with first priority, without any further notice or act by any party that may otherwise be required under any other law.  Notwithstanding the foregoing, the Chapter 7 Trustee shall, upon the request of MGG, execute and deliver such documents as may be reasonably requested (but not required) by MGG to create and perfect the security interests and liens described herein under applicable non-bankruptcy law and MGG is authorized (but not required) to file and record such documents and take such other actions as may

10

be necessary to perfect such security interests and liens under all such laws and to correctly

describe the Collateral subject thereto.  Further, MGG is entitled to adequate protection of its

interest in the Chapter 7 Operating Account and MGG is hereby granted an allowed superpriority

claim against the Debtor's estate as provided for in Bankruptcy Code section 507(b) with respect

to all amounts held in the Chapter 7 Operating Account.

6. **Disbursement to MGG**. On the Effective Date, the Chapter 7 Trustee is authorized

to and shall immediately disburse the sum of $1,025,145.20 to MGG from the Cash Collateral (the

"Initial MGG Distribution").[1]

7. **Authorized Use of Cash Collateral by the Chapter 7 Trustee**. On or after the

Effective Date, and only after payment of the Initial MGG Distribution as reflected in Paragraph

6 above, the Chapter 7 Trustee shall pay from the remaining Cash Collateral (i) any Court-

approved fee application payable to Epiq eDiscovery Solutions, Inc. in the amount of no more than

$30,981.77; (ii) an allowed administrative claim in the amount of no more than $45,000.00 to JD

CP Investors, LLC d/b/a Continental Group LLC ("JD CP"), which represents a full and final

settlement of all claims that JD CP has or could assert against the Chapter 7 Estate of ZS; (iii)

$100,000.00 reflecting partial administrative costs incurred by McCarter & English, LLP; (iv)

$10,000.00 reflecting partial administrative costs incurred by the Chapter 7 Trustee's retained

accountant Vestcorp; and (v) a $30,000.00 carve-out to be held for the benefit of unsecured

creditors.  MGG hereby waives its right to receive a distribution based upon the MGG Claim from

the foregoing carve-out for unsecured creditors, but reserves all other rights to distributions from

the Chapter 7 Estate of ZS.  Other than payments detailed above in Paragraphs 6 and 7, the Chapter

7 Trustee shall not make any other payments from the Cash Collateral without MGG's prior written

---

[1] The Chapter 7 Trustee has made the Parties aware of certain monthly trustee bank fees.  In addition, the Chapter 7 Trustee is authorized to pay any mailing costs associated with this Motion from the Cash Collateral prior to making the Initial MGG Distribution.

11

consent, or until a further Court Order which shall not be inconsistent with MGG's rights hereunder, and no additional amounts shall be owed or paid to any of the above payees from the Cash Collateral other than to MGG except as expressly set forth herein. The Chapter 7 Trustee expressly waives, releases, discharges, and agrees not to pursue any and all claims under Bankruptcy Code Section 506(c) as they may relate to MGG and its Collateral and Cash Collateral. To the extent Court Orders are not obtained with regard to items i-iv above, the remaining funds shall be disbursed to MGG upon the closing of the ZS Bankruptcy estate. In addition, the Chapter 7 Trustee shall retain $15,000.00 in a segregated Chapter 7 Trustee account, which funds shall not be utilized without the express consent of MGG, and which if not utilized shall be returned to MGG at or before the closure of the ZS Bankruptcy proceeding.

8. **Settlement Amount**. MGG agrees that if, following the Effective Date of this Agreement, it receives the total amounts (both the Initial Settlement Payment and the Deferred Settlement Payment) called for by the Mediation Settlement Agreement (the "Zayat Settlement Payment"), then MGG shall pay over to the Chapter 7 Trustee the total amount of $452,500 (the "Settlement Amount"). In order to effectuate that obligation, MGG shall first pay over to the Chapter 7 Trustee the sum of $271,500.00[2] via wire to the Chapter 7 Trustee within three days of receipt of the Initial Settlement Payment (as defined in the Mediation Settlement Agreement), reflecting 9.05% of the Initial Settlement Payment potentially owed, with any such amounts paid reducing the balance of the total Settlement Amount on a dollar-for-dollar basis. Then, within three days of receipt of the Deferred Settlement Payment (as defined in the Mediation Settlement Agreement), MGG shall pay over to the Chapter 7 Trustee the sum of $181,000.00[3], reflecting

---

[2] Of the $271,500 to be paid to the Chapter 7 Trustee as set forth herein, the sum of $50,000 represents payment from MGG as consideration for the release it is being provided by the Chapter 7 Trustee under this Settlement Agreement and the sum of $221,500 to be paid to the Chapter 7 Trustee represents payment from the Zayat Parties for the release to be provided to them by the Chapter 7 Trustee under this Settlement Agreement.

[3] The $181,000 to be paid to the Chapter 7 Trustee represents payment from the Zayat Parties as consideration for the release that the Chapter 7 Trustee is providing to them under this Settlement Agreement.

ME1 41653134v.6

9.05% of the Deferred Settlement Payment as set forth in the Mediation Settlement Agreement, with any amounts paid by MGG reducing the balance of the Settlement Amount on a dollar-for-dollar basis.  However, in the event that MGG does not obtain any amounts from the Zayat Parties, it shall not be obligated to pay any of these amounts to the Chapter 7 Trustee, and in no event shall MGG be obligated to pay more than the Settlement Amount.  In the event that MGG ultimately receives less than the amounts called for by the Mediation Settlement Agreement with the Zayat Parties, then its obligation to pay any of the above amounts over to the Chapter 7 Trustee under this Settlement Agreement shall be reduced such that MGG shall be obligated to pay the Chapter 7 Trustee only 9.05% of the amounts that it actually receives in payment by way of settlement from the Zayat Parties.

9.    **Reporting**.  The Chapter 7 Trustee shall be entitled to receive, and MGG shall promptly provide, reasonable, non-privileged, meaningful information concerning the status of payments made to MGG by the Zayat Parties.

10.    **Zayat Party Contribution**.  As reflected in the Mediation Settlement Agreement, the Zayat Parties shall pay the total amount of $5.0 million to be allocated between MGG and the Chapter 7 Trustee as set forth herein and in the other agreements among the parties.

11.    **Memorabilia**.  The Chapter 7 Trustee is currently storing various trophies and memorabilia which were seized from the former offices of ZS ("Memorabilia").  Ahmed Zayat and several of the Zayat Parties objected to the removal of the Memorabilia based upon the position that the Memorabilia were not estate property.  Upon the Effective Date of this Agreement the Memorabilia (as set forth on ZS Schedule A/B, Part 7, #42) shall be deemed abandoned by the Chapter 7 Trustee free and clear of any claims of the Chapter 7 Trustee and MGG.

12.    **Intellectual Property and Other Assets**.  MGG maintains a security interest in the intellectual property and all other assets of ZS.  The Chapter 7 Trustee shall take all necessary steps to auction any of the intellectual property and any other remaining assets of ZS, and shall

13

permit MGG to serve as the credit bidder, subject to the inclusion of a separate carve-out(s), to be agreed upon by MGG and the Chapter 7 Trustee or fixed by the Court in a manner consistent with this Settlement Agreement, for the sale and any attendant litigation thereto, with respect to any such assets.[4]

13.    **Releases Among the Parties**. On the Effective Date, other than as set forth in this Settlement Agreement and the right to enforce the relief set forth in this Settlement Agreement, the Chapter 7 Trustee, both individually and in his capacity as the Chapter 7 Trustee, hereby releases any and all claims (including, without limitation, statutory avoidance claims under the Bankruptcy Code or applicable state law), known or unknown, direct or derivative, that he may possess, whether in his capacity as a Chapter 7 Trustee or as a representative of the interests of ZS, against MGG and its officers, directors, employees, investors, affiliates, insurers, attorneys, agents, successors or assignees (the "MGG Released Parties") relating in any way to the Loan Documents, the business relationship between MGG and ZS, or to the ZS Bankruptcy proceeding. In furtherance of this Release, the Chapter 7 Trustee agrees to take any and all reasonable steps necessary to dismiss, withdraw, or cease any claims existing in any forum that have been or may be asserted against MGG on behalf of ZS or any of its officers, directors, employees, owners, representatives, or agents, or any person or entity purporting to enforce the rights of or pursue the interests of ZS.

Immediately upon the Effective Date, other than MGG's right to enforce the terms of this Settlement Agreement and any rights to receive in the future distributions or recoveries relating to the MGG Allowed Claims  and the Collateral, MGG hereby releases any and all claims, whether

---

[4]  In addition to the above, MGG shall be responsible and shall reimburse the Chapter 7 Trustee for any documented costs incurred as a result of the Chapter 7 estate's ownership interest in the thoroughbreds Paynter and Prayer for Relief in which MGG maintains a perfected security interest, so long as MGG has recovered all amounts generated by those assets.  In the event the Chapter 7 Trustee seeks to sell the ownership interests MGG shall have the opportunity to serve as the stalking horse bidder pursuant to the provisions of paragraph 12 of this Settlement Agreement.

known or unknown, against the Bankruptcy estate of ZS, Jeffrey T. Testa, both individually and

in his capacity as the Chapter 7 Trustee, and the Chapter 7 Trustee's retained professionals relating

to the ZS Bankruptcy proceeding (collectively, the "Chapter 7 Trustee Released Parties") arising

prior to the Effective Date.

On the Effective Date, other than as set forth in this Settlement Agreement and the right to

enforce the relief set forth in this Settlement Agreement, the Zayat Parties shall be deemed to have

released any and all claims, known or unknown, direct or derivative, that they may possess against

the MGG Released Parties relating in any way to the Loan Documents, the business relationship

between MGG and ZS, or to the ZS Bankruptcy proceeding.  In furtherance of this Release, the

Zayat Parties agree to take any and all reasonable steps necessary to dismiss, withdraw, or cease

any claims existing in any forum that have been or may be asserted against the MGG Released

Parties.

14.    **MGG Release to Zayat Parties**. As of the Effective Date, and so long as the

Initial Settlement Payment has been received by MGG and the security for the Deferred

Settlement Payment is in place, then MGG will be deemed to have irrevocably and

unconditionally, fully, finally and forever waived, released, acquitted, and discharged the Zayat

Parties and any entity in which any of the Zayat Parties have a financial interest or over which

any of the Zayat Parties has control, and any heirs, assignees, and successors in interest thereof

(herein, the "Zayat Releasees"), from any and all manner of actions, causes of action, suits, costs,

debts, liabilities or obligations of whatever kind or nature, whether known or unknown,

suspected or unsuspected, in law or equity, which MGG, from the beginning of time through the

Effective Date, has, had, may have, or may claim to have, against the Zayat Releasees that was

or could have been asserted against them, related to any matter.  For the sake of clarity, the

foregoing release shall not affect MGG's rights to fully enforce the terms of this Agreement or

15

the Mediation Settlement Agreement, including its rights to enforce upon the security provided

for in Paragraph 5 of the Mediation Settlement Agreement upon the failure to timely pay the

Deferred Settlement Payment, and the related agreements relating to the resolution of the

disputes among the Parties.  For the avoidance of doubt, nothing herein shall release, waive, or

impair, or shall be construed to release, waive, or impair, any right of MGG, or any entity

employed by, representing, affiliated with MGG or in which MGG has a financial interest or

over which MGG possesses control, to receive distributions from the estate of Ahmed Zayat or

Zayat Stables in the bankruptcies captioned *In re Ahmed A. Zayat*, Case No. 20-20387-VFP and

*In re Zayat Stables, LLC*, Case No. 20-20524-VFP, or to enforce or pursue other rights as a

creditor in those proceedings, as provided for in the Bankruptcy Code or otherwise applicable

law.

15.  **Zayat Party Releases**. Immediately upon the Effective Date, other than as set forth

in this Settlement Agreement and the right to enforce the relief set forth in this Settlement

Agreement, the Chapter 7 Trustee, both individually and in his capacity as the Chapter 7 Trustee,

shall be deemed to have released any and all claims (including, without limitation, statutory

avoidance claims under the Bankruptcy Code or applicable state law), known or unknown, direct

or derivative, that he may possess, whether in his capacity as a Trustee or as a representative of

the interests of ZS, against the Zayat Parties (the "Zayat Released Parties"), including any entity

in which any of the Zayat Parties have a financial interest over or  which any of the Zayat Parties

have control, and any heirs assignees, and successors in interest thereof,  relating in any way to the

ZS Bankruptcy proceeding.[5]  In furtherance of this Release, on the Effective Date, the Chapter 7

Trustee agrees to take any and all reasonable steps necessary to dismiss, withdraw, or cease any

---

[5] For clarification, the release provided to the Zayat Parties by the Chapter 7 Trustee shall not serve to expunge or withdraw the proof of claim filed by the ZS bankruptcy estate (Claim No. 28-1) in the Ahmed Bankruptcy proceeding.

ME1 41653134v.6

claims existing in any forum that have been or may be asserted against the Zayat Parties on behalf of ZS or any of its officers, directors, employees, owners, representatives, or agents, or any person or entity purporting to enforce the rights of or pursue the interests of ZS.[6]  Prior to the hearing to approve this Settlement Agreement the Zayat Parties shall execute tolling agreements, which shall provide that in the event that the Settlement Agreement is approved by the Bankruptcy Court but not Effective due to a pending appeal, that the statute of limitations shall be extended for a period of 30 days from the date that the Order approving the Settlement Agreement becomes final and no longer appealable.

Immediately upon the Effective Date, the Zayat Parties shall be deemed to have released any and all claims, whether known or unknown, against the Chapter 7 Trustee Released Parties.

16.  **Obligations of Good Faith and Cooperation**. The Parties agree that they shall proceed in good faith in all respects concerning this Agreement generally and this Agreement specifically as it relates, directly and indirectly to the Settlement Amount.  In the event that the Chapter 7 Trustee in good faith decides not to pursue an action, claim or right in connection with his duties as the Chapter 7 Trustee of the Estate of Zayat Stables, or to discontinue the pursuit of any such action, claim or right, it shall first meet and confer with MGG and obtain MGG's consent thereto, and shall provide MGG an opportunity to take an assignment of such action, claim, or right.

17.  **Miscellaneous**.

(A).    MGG shall have the full protection of Bankruptcy Code section 363(m) with respect to the debts, Obligations, liens, and security interests created or authorized by this Settlement Agreement in the event that the Order approving this Settlement Agreement is vacated, reversed, or modified, on appeal or otherwise, by any court of competent jurisdiction.  The form

---

[6] The Zayat Released Parties shall not include any independent director(s) who are not Zayat Parties.

of any Order approving this Settlement Agreement shall be acceptable to MGG in its reasonable viewpoint.

(B).    The Stipulations contained in this Settlement Agreement shall be binding upon all parties in interest, including without limitation, the Chapter 7 Trustee, his agents, professionals and any other person or entity acting for or on behalf of the Chapter 7 Trustee; the Zayat Parties and any person or entities representing them or purporting to act in their interest; and MGG and its affiliates, and all other parties in interest are deemed to have irrevocably waived and relinquished all claims and rights to challenge any of the terms and conditions of the Settlement Agreement.

(C).    If any or all of the provisions of this Settlement Agreement are modified, vacated, or stayed by subsequent order of this Court or any other court of competent jurisdiction, such stay, modification, or vacation shall not affect the validity and enforceability of any security interest or lien granted or authorized by this Settlement Agreement prior to such stay, modification, or vacation.    The reversal or modification on appeal of any or all of the provisions of this Settlement Agreement shall not affect the validity or enforceability of any security interest or lien granted or authorized by this Settlement Agreement.

(D).    Nothing in this Settlement Agreement shall constitute a waiver of any of MGG's rights whatsoever and nothing contained herein shall be deemed a waiver of the rights of MGG to:  (i) Consent or decline to consent to any extension of the use of its Cash Collateral by the Chapter 7 Trustee; or (ii) Pursue any other right or remedy available to it under the Bankruptcy Code or otherwise, including, without limitation, the right to seek or to oppose relief from the automatic stay, and the right to seek or to oppose adequate protection or any rights on account of any prior or prospective unauthorized uses of its Cash Collateral.

18

(E). The failure of MGG to seek relief or otherwise exercise its rights and remedies under this Settlement Agreement, the Loan Documents or otherwise, as applicable, shall not constitute a waiver of any of MGG's rights hereunder, thereunder or otherwise.

(F). Nothing in this Settlement Agreement shall be deemed to terminate, modify, or release any obligations of any party aside from the Zayat Parties with respect to such entity's obligations under any of the Loan Documents.

(G). Until the Effective Date, MGG retains all of its rights under the Final 543 Order, which shall continue to govern MGG's rights with respect to its Cash Collateral through the Effective Date.

(H). The automatic stay of section 362 of the Bankruptcy Code is hereby modified to permit the performance of each and every right and obligation set forth in this Settlement Agreement.

18. **Counterparts**. This Settlement Agreement may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which taken together shall constitute one and the same agreement.  Any of the Parties may execute this Settlement Agreement by signing any such counterpart and each of such counterparts shall for all purposes be deemed an original.  This Settlement Agreement may be executed by facsimile and/or e-mail which shall have the same force and effect as an original signature.

19. **Language Construed as Jointly Drafted by the Parties**. The Parties agree that each of them has had a full opportunity to participate in the drafting of this Settlement Agreement and, accordingly, any claimed ambiguity shall be construed neither for nor against any of the Parties.

20. **Voluntary Agreement.**  The Parties enter into this Settlement Agreement voluntarily and have had the opportunity at their sole discretion to consult with counsel.

21. **Entire Agreement.**  The Parties agree that, aside from this Agreement, the Mediation Settlement Agreement and the Zayat Trustee Settlement, and any other agreements expressly

19

provided for or preserved in any of those three agreements, there are no other agreements between the Parties and that these three agreements constitute the entire agreement among the Parties, and constitute a complete merger of any prior negotiations and agreements relating to the terms of these three agreements.

22. **Successors and Assigns.** This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective executors, heirs, successors and assigns.

23. **Further Assurances.** From time to time, upon request, the Parties will, without further consideration, promptly execute, deliver, acknowledge and file all such further documents agreements, certificates and instruments and do such further acts as the persons or entities entitled to the benefit of this Settlement Agreement may reasonably require to evidence or effectuate the transactions contemplated by this Settlement Agreement.

24. **Governing Law/Jurisdiction**. EXCEPT TO THE EXTENT (IF ANY) GOVERNED BY THE BANKRUPTCY CODE, THE SETTLEMENT AGREEMENT AND THE RIGHTS AND DUTIES OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED, ENFORCED AND PERFORMED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW JERSEY WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAWS THAT WOULD REQUIRE THE APPLICATION OF LAWS OF ANOTHER JURISDICTION.  THE PARTIES ACKNOWLEDGE AND AGREE THAT THE BANKRUPTCY COURT SHALL HAVE THE EXCLUSIVE JURISDICTION OVER THIS SETTLEMENT AGREEMENT AND THAT ANY CLAIMS ARISING OUT OF OR RELATED IN ANY MANNER TO THIS SETTLEMENT AGREEMENT SHALL BE PROPERLY BROUGHT ONLY BEFORE THE BANKRUPTCY COURT AND CONSENT TO SUCH BANKRUPTCY COURT'S POWER TO HEAR AND DETERMINE ALL SUCH CLAIMS AS A CORE PROCEEDING.

25. **No Admission of Liability**. This Settlement Agreement is in compromise of disputed claims between the Parties, and shall not be construed as an admission by the Parties or by any of their respective present or former directors, officers, employees or agents, of a violation of any federal, state, or local statute, regulation, judicial doctrine, or other law, or a violation of any right, or breach of any duty, obligation or contract.  All communications (whether oral or in writing) between and/or among the Parties, their respective counsel and/or other respective representatives relating to, concerning or in connection with this Settlement Agreement, or the matters covered hereby and thereby, shall be governed and protected in accordance with Federal Rule of Evidence 408 and all other similar rules and laws to the fullest extent permitted by law, and no Party hereto shall seek to admit this Settlement Agreement into evidence against any other party hereto, except in an action to enforce or interpret the terms of this Settlement Agreement.

26. **Captions**. The captions of this Settlement Agreement are for convenience only and are not a part of this Settlement Agreement and do not in any way limit or amplify the terms and provisions of this Settlement Agreement and shall have no effect on its interpretation.

27. **Acknowledgment of the Parties**. Each of the Parties acknowledges that:  (i) it has relied on its own independent investigation, and has not relied on any information or representations furnished by any other Party or any representative or agent thereof in determining whether or not to enter into this Settlement Agreement (other than the representations set forth in this Settlement Agreement); (ii) it has conducted its own due diligence in connections therewith, as well as undertaken the opportunity to review information, ask questions and receive satisfactory answers concerning the terms and conditions of this Settlement Agreement; and (iii) it possesses the knowledge, experience and sophistication to allow it to fully evaluate and accept the merits and risks of entering into the transactions contemplated by this Settlement Agreement.

ME1 41653134v.6

28.   **Authorization**. The person executing this Settlement Agreement on behalf of each respective Party warrants and represents that she or he is authorized and empowered to execute and deliver this Agreement on behalf of such Party.

[Signature Pages Follow]

22

Chapter 7 Trustee of Zayat Stables, LLC

By:_____
     Jeffrey T. Testa

Dated: _____ __, 2022


MGG Investment Group LP

By:_____
                           [Name]
                           [Title]

Dated: _____ __, 2022

MGG SF Evergreen Fund LP

By: _____
                           [Name]
                           [Title]

Dated: _____ __, 2022


MGG Specialty Finance Fund LP

By:_____
                           [Name]
                           [Title]

Dated: _____ __, 2022

MGG SF Drawdown Master Fund (Cayman) LP

By: _____
                           [Name]
                           [Title]

Dated: _____ __, 2022


MGG SF Drawdown Unlevered Fund LP

By:_____
                           [Name]
                           [Title]

Dated: _____ __, 2022

MGG SF Evergreen Master Fund (Cayman) LP

By: _____
                           [Name]
                           [Title]

Dated: _____ __, 2022


MGG SF Evergreen Unlevered Fund LP

By:_____
                           [Name]
                           [Title]

Dated: _____ __, 2022

MGG Insurance Fund Series Interests of the SALI Multi-Series Fund LP

By: _____
                           [Name]
                           [Title]

Dated: _____ __, 2022

23

MGG SF Evergreen Unlevered
Master Fund II (Cayman) LP

MGG Onshore Funding II LLC

By:_____
                                    [Name]
                                    [Title]

By: _____
                                    [Name]
                                    [Title]

Dated: _____ __, 2022

Dated: _____ __, 2022

By:_____
        Ahmed A. Zayat

By: _____
        Joanne Zayat

Dated: _____ __, 2022

Dated: _____ __, 2022

By:_____
        Justin Zayat

By: _____
        Sherif Zayat

Dated: _____ __, 2022

Dated: _____ __, 2022

By:_____
        Ashley Zayat Weiss

By: _____
        Glenn Weiss

Dated: _____ __, 2022

Dated: _____ __, 2022

By:_____
        Benjamin Zayat

By: _____
        Emma Zayat

Dated: _____ __, 2022

Dated: _____ __, 2022

JPZ Holdings, LLC

By:_____
                                    [Name]
                                    [Title]

Dated: _____ __, 2022

24